UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.S. by and through his Guardian ad Litem, Lisa B. Herrera,<br><br>              Plaintiff,<br><br>      v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>              Defendant. | Case No. CV 17-6023 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I.    SUMMARY

On August 14, 2017, plaintiff R.S., by and through his Guardian ad Litem Lisa B. Herrera, filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions").  The Court has taken the Motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 17, 2017, Case Management Order ¶ 5.

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 16, 2013, plaintiff's aunt, Lisa Herrera, filed an application for Supplemental Security Income on plaintiff's behalf alleging disability beginning on December 10, 2009, essentially due to attention deficit hyperactivity disorder ("ADHD").[1] (Administrative Record ("AR") 20, 154, 186). The Administrative Law Judge ("ALJ") examined the medical record and on October 9, 2015, held a video hearing, during which the ALJ heard testimony from plaintiff (who was represented by counsel), plaintiff's aunt, and a medical expert. (AR 39-66).

On December 1, 2015, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 20-33). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: ADHD versus bipolar disorder, and a history of speech problems (AR 23); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 23); (3) plaintiff did not have an impairment or combination of impairments that functionally equals the severity of the listings[2] (AR 24-32); and (4) statements concerning the intensity, persistence, and limiting effects of plaintiff's subjective symptoms were "not entirely credible" (AR 26).

---

[1]Plaintiff was born on July 16, 2007, and thus was "preschool" age when the application was filed (20 C.F.R. § 416.926a(g)(2)(iii)), and "school age" on the date of the ALJ's decision (20 C.F.R. § 416.926a(g)(2)(iv)). (AR 23).

[2]With respect to the six "functional equivalence domains," the ALJ specifically found that plaintiff's impairments caused (1) no limitation in the domain of moving about and manipulating objects; (2) less than marked limitation in the domains of acquiring and using information, interacting and relating with others, self care, and health and physical well being; and (3) marked limitation in the domain of attending and completing tasks. (AR 19-26).

On June 20, 2017, the Appeals Council denied plaintiff's application for review. (AR 1).

**III.  APPLICABLE LEGAL STANDARDS**

    **A.  Administrative Evaluation of Childhood Disability Claims**

To qualify for childhood disability benefits an "individual under the age of 18" (*i.e.*, "child" or "claimant") must establish that he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906; see Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1013 (9th Cir. 2003) (citation omitted).

In assessing whether a child is disabled, an ALJ is required to use the following three-step sequential evaluation process:

(1)    Is the child engaged in substantial gainful activity?  If so, the child is not disabled.  If not, proceed to step two.

(2)    Does the child have a sufficiently severe medically determinable impairment or combination of impairments?  If not, the child is not disabled.  If so, proceed to step three.

(3)    Do the child's impairments meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listings"), or functionally equal the listings (*i.e.*, "functional equivalence")?  If so, and if the impairments satisfy the duration requirement, the child is disabled.  If not, the child is not disabled.

20 C.F.R. §§ 416.924(a), 416.926, 416.926a; see Social Security Ruling ("SSR") 09-1p, 2009 WL 396031, *1.

///

///

**B.    Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard of review in disability cases is "highly deferential."  Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted).  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's

///

4

reasoning "in a way that allows for meaningful review." <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (citing <u>Treichler</u>, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. <u>Brown-Hunter</u>, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. <u>See</u> <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

Plaintiff essentially contends that a reversal or remand is warranted because the ALJ failed properly to evaluate whether plaintiff's ADHD impairment functionally equaled the listings. (Plaintiff's Motion at 4-12). The Court agrees.

### A. Pertinent Law

A "whole child approach" is used when determining functional equivalence in child disability cases. <u>See</u> SSR 09-1p, 2009 WL 396031, *2; <u>see generally</u> 20 C.F.R. § 416.926a(n) ("responsibility for deciding functional equivalence rests with [ALJ]"). Under such approach, an ALJ must first evaluate a claimant's overall functioning, specifically how appropriately, effectively, and independently the child functions in all settings and all activities compared to children of the same age who do not have impairments. 20 C.F.R. § 416.926a(a), (c). An ALJ then must determine the degree to which the child's impairments limit his functioning in six broad domains, namely (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being (collectively "domains"). 20 C.F.R. § 416.926a(b)(1)(i)-(vi); SSR 09-2p, 2009 WL 396032, at *1-*2.

In general, a child's impairments functionally equal the listings to the extent they cause limitations of "listing-level severity." 20 C.F.R. § 416.926a(a), (d).

5

Impairments are of "listing-level severity" if they cause "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(a), (d). In general, limitation in a domain is "marked" when the child's impairments "interfere[] seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Limitation is "extreme" when the child's impairments "interfere[] <u>very</u> seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added). "Extreme" limitation is the rating given to the "worst limitations" in a domain. 20 C.F.R. § 416.926a(e)(3). A child's day-to-day functioning may be considered "seriously" or even "very seriously" limited whether impairments impact only one activity or limit several activities. SSR 09-1p, 2009 WL 396031, at *9 (citing 20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i)). In addition, the effects of a child's impairments are considered "longitudinally" (*i.e.*, "over time"). SSR 09-1p, 2009 WL 396031, at *9 & n.17. Hence, a child may be found to have a "marked" or "extreme" limitation in a domain "even though the child does not have serious or very serious limitations every day." Id. at *9.

The domain of interacting and relating with others generally measures how well children "initiate and sustain emotional connections with others, develop and use the language of [a child's] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i); SSR 09-5p, 2009 WL 396026, at *2. For example, "[p]reschool children (age 3 to attainment of age 6)," are expected to be able to "socialize with children [and] adults," "start to develop friendships" with other children their own age, "use words instead of actions to express [themselves]," and play with other children (both individually and in groups) "without continual adult supervision." 20 C.F.R. § 416.926a(i)(2)(iii); SSR 09-5p, 2009 WL 396026, at *6. "School-age children (age 6 to attainment of age 12)" are expected to be able to "develop more lasting friendships with children who are [the same] age," "begin to

understand how to work in groups," and "have an increasing ability to understand another's point of view and to tolerate differences." 20 C.F.R. § 416.926a(i)(2)(iv); SSR 09-5p, 2009 WL 396026, at *6.

**B.    Analysis**

Here, a remand is warranted because the ALJ's evaluation of functional equivalence contains multiple errors, including those detailed below.

First, the ALJ's evaluation of the medical opinion evidence suggests a misapprehension of the governing law. For example, the ALJ "agreed" with the opinion of Dr. M. Salib, a state agency reviewing physician, that "[plaintiff] does not functionally equal a *relevant* listing," noting Dr. Salib had "concluded that the [plaintiff's] ADHD did not functionally equal the *applicable* listing[.]"[3]  (AR 26) (citing Exhibit 1A at 7 [AR 73]) (emphasis added). As noted above, however, determining functional equivalence involves evaluation of whether a claimant's impairment-related limitations are of "listing-level severity" generally, not whether an impairment matches the specified medical criteria for a particular listing. See, e.g., 20 C.F.R. § 416.926a(d) (ALJ "will not compare [claimant's] functioning to the requirements of any specific listing [when evaluating functional equivalence]").

Second, the ALJ's evaluation of plaintiff's overall functioning is not entirely complete or accurate. For example, the ALJ wrote that Dr. Betty Borden, a state agency examining psychologist, had found plaintiff "cooperative" during a September 26, 2013 psychological evaluation. (AR 26) (citing AR 394). Nonetheless, on its own, Dr. Borden's conclusory observation based on a one-time consultative examination likely provides little significant or probative evidence of plaintiff's overall functioning. See 20 C.F.R. § 416.924a(b)(6) (ALJ may not draw

---

[3]Dr. Salib more precisely opined that plaintiff's impairment did not "functionally equal the *listings*," not any particular listing. (AR 73) (emphasis added).

inferences about claimant's day-to-day functioning from evidence of how child functions in "one-to-one, new, or unusual situations" like "a consultative examination"); SSR 09-2P, 2009 WL 396032, at 12 n.24 (cautioning that "[a]ccepting the observation of the child's behavior or performance in an unusual setting, like a [consultative examination], without considering the rest of the evidence could lead to an erroneous conclusion about the child's overall functioning"); see, e.g., SSR 09-2P, 2009 WL 396032, at 12 (evidence that child claimant did not display hyperactivity during consultative examination not truly inconsistent with other "longitudinal evidence of [plaintiff's] hyperactivity at home and in the classroom" considering "well-known clinical phenomenon that children with some impairments (for example, AD/HD) may be calmer, less inattentive, or less out-of-control in a novel or one-to-one setting, such as a [consultative examination]") (citing 20 C.F.R. § 416.924a(b)(6)).

In addition, the ALJ wrote "[t]he record does not show frequent reprimands or suspensions [of plaintiff] due to poor behavior while at school." (AR 26). Nonetheless, the record is replete with evidence from teachers and/or other school officials which suggests that plaintiff had repeatedly engaged in misbehavior that would necessarily have been met with some manner of corrective action. See, e.g., AR 287, 289, 293, 319, 323, 421, 437 [plaintiff "cannot control his impulses," "[a]rgues easily, whines about other children," "[h]its easily either in play or rough play," "[persuaded] other children to misbehave with him," "[c]ontinues to take food from others"]; AR 313 [plaintiff has "poor impulse control," "cannot keep hands or feet to himself," "constantly makes noises with his mouth"]; AR 331-32 [kindergarten report card marking plaintiff's "Social Skills and Work Habits" as "unsatisfactory" or "need[ing] improvement" in areas of "[f]ollows classroom/ playground rules and directions," "[w]orks, shares and plays with others cooperatively," and "[r]espects rights and property of others"]; AR 335 ["Behavior for the Week" report noting plaintiff had been "taking food" and "[b]ullying

8

children @ lunch"]; see also AR 200, 215, 218 [noting that plaintiff had "serious" and/or "very serious" problems on an hourly basis with "[p]laying cooperatively with other children," "[s]eeking attention appropriately," and "asking permission appropriately," "[f]ollowing rules," "[r]especting/obeying adults in authority" as compared to same-aged children without impairment]). Consistently, there is also evidence that plaintiff required constant adult supervision at school. (See, e.g., AR 200, 215, 218 [plaintiff "[must] be constantly supervised by adult" and "constantly monitored for behavior choices"] (emphasis in original); AR 287, 289, 293, 319, 323, 421, 437 [needs "to be chaperoned through entire school"]; AR 313, 332 ["requires constant supervision in the classroom, playground, and the school environment"]); AR 430 ["MUST be constantly monitored for appropriate behaviors[]" on playground and "often makes poor choices during peer play"] (emphasis in original)).

The record evidence also suggests that plaintiff had, in fact, been disciplined for poor behavior on multiple occasions. (See, e.g., AR 308 [plaintiff instructed "to move closer to [teacher]" after ignoring "multiple" requests to stop "kicking his legs" into other student's "square on the rug"]; AR 334 [notes informing caretaker that plaintiff had injured himself when "[he] and another child were running in the classroom despite verbal reminders not to do so[,]" and that plaintiff had also jumped from a bench onto another child's arm even though he had previously been warned "not to jump from furniture"]; AR 515-16 [August 4, 2015 Child/Adolescent Full Assessment form noting plaintiff "not allowed to participate in activities in class because in trouble at least 10 times in one day," plaintiff admitted "I hit people, I push others only at school," and plaintiff's aunt reported that plaintiff "gets in trouble at school daily," "spends a lot of time in office," and "teachers can't handle [plaintiff]"]; AR 519 [plaintiff "kicked out of preschool" because he "tried to jump the fence and run into the busy street"]; AR 527 [May 20, 2014 mental health assessment was requested because "school" had

9

warned plaintiff was "at risk of being suspended from school due to his behavioral problems[]"]; AR 545 [September 29, 2015 "Behavior notification form" reflecting plaintiff still needed to be disciplined despite "several [prior] warnings," and was "suspended" from an educational assistance program for several days for disrespecting adults and distracting other students]; see also AR 431 [noting counseling sessions with school psychologist had been recommended due to plaintiff's "behavior within the classroom setting"]).

Third, there are similar errors in the specific reasons the ALJ gave for finding "less than marked limitation" in plaintiff's domain of interacting and relating to others. For example, the ALJ wrote "[s]chool records indicated that the [plaintiff] interacted easily with his classmates and adults in the classroom." (AR 30) (citing Exhibit [3]F at 51 [AR 336]). The ALJ's sweeping statement, however, appears to have been gleaned solely from the "strengths" section of a single school record, namely a June 1, 2012, "Child's Developmental Progress" report which also noted several areas in which plaintiff needed "work[]" (i.e., "self-regulation" and being "distracted easily"). (AR 336); see, e.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the portions of record which support non-disability) (citations omitted).

Similarly, the ALJ wrote "[i]n May 2014, it was noted that the [plaintiff] was 'sociable and friendly' but occasionally aggressive while playing, so other children did not want to play with him." (AR 30) (citing "Exhibit F, p. 51). The ALJ appears to be referencing a May 2014 "Child/Adolescent Initial Assessment" which more precisely states "[plaintiff] is sociable and friendly however due to getting carr[ied] away in his play activity, [plaintiff] *becomes* aggressive (*pushing/hitting*) resulting in peers *refusing* to play with [plaintiff]." (AR 528) (emphasis added). The ALJ further observed that "[d]uring the evaluation, the [plaintiff] was talkative and clearly expressed his thoughts and ideas." (AR 30) (citing Exhibit 15F at 8 [AR 534]). The assessment, however, reported that when

10

plaintiff first arrived he "spoke in a soft low voice," and that plaintiff became "talkative," "expressive," and "clearly expressed his thoughts and ideas" specifically "[w]hen talking about his interests[.]" (AR 534).

The ALJ also wrote "[plaintiff's] second grade teacher commented that the [plaintiff] 'works best individually.'" (AR 30) (citing Exhibit 16F at 13 [AR 556]). The quoted comment, however, was expressed in the section of a "Teacher's Questionnaire" form which requested an explanation as to why "it [had] been necessary to implement [several] behavior modification strategies" (*i.e.*, "[Plaintiff] has moved 3 times. He works best individually. He has written several paragraphs on 'Why I'm here.'") to address plaintiff's problems interacting and relating with others. (AR 556). In fact, on the same page of the questionnaire, the teacher rated plaintiff as having "obvious problem[s]" each day with "[a]sking permission appropriately" and "taking turns in a conversation," and weekly with respect to "[p]laying cooperatively with other children." (AR 556).

The foregoing incomplete and/or incorrect characterization of the record evidence calls into question the validity of both the ALJ's functional equivalence determination, and the ALJ's decision as a whole. See generally Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ's decision); Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record"); cf., e.g., Lesko v. Shalala, 1995 WL 263995, *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Defendant suggests there are other bases upon which the ALJ could have determined that plaintiff had less than marked limitation in interacting and relating with others on other grounds. (Defendant's Motion at 3-6). Since the ALJ did not

identify any such alternative bases in his decision, this Court may not affirm the ALJ's non-disability determination on the additional grounds the defendant proffers.  See Trevizo, 871 F.3d at 675 (citations omitted).  In addition, even assuming, for the sake of argument only, that the ALJ could properly have given the most weight to the existing medical opinion evidence (despite several potentially significant shortcomings therein, as plaintiff suggests), a remand is still appropriate given the ALJ's apparent inadequate consideration of other significant, probative evidence in the record.

Finally, the Court cannot confidently conclude that the ALJ's errors were harmless.  As the discussion above suggests, the record contains evidence from which a reasonable ALJ could determine that plaintiff's impairments were of "listing-level severity" based on "marked limitation" in two domains – *i.e.*, "attending and completing tasks" (a domain in which the ALJ already found "marked limitation") (AR 28) as well as "interacting and relating with others."

Accordingly, a remand is warranted to permit the ALJ to re-evaluate functional equivalence.

///
///
///
///
///
///
///
///
///
///
///
///

12

## V.    CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED in part, and this matter is REMANDED for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   January 24, 2019

_/s/_
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[4]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  On remand, however, the Commissioner may wish to reassess whether various third party statements have been adequately considered.

[5]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).